IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LAVERNE WILLIAMS, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| NATIONAL VIDEO MONITORING CO. LLC d/b/a EYEQ MONITORING, | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW, Laverne Williams ("Plaintiff" or "Ms. Williams"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.* ("ADA").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117.

3.

Defendant National Video Monitoring Co. LLC d/b/a EyeQ Monitoring ("Defendant") does business in this judicial district. Additionally, the unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is a citizen of the United States of America and a resident of the State of Georgia. Plaintiff is subject to the jurisdiction of this Court.

5.

Defendant is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

6.

Defendant is a foreign limited liability company qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

7.

Defendant may be served with process by delivering a copy of the summons and complaint to its corporate Registered Agent, CT Corporation System, located at 289 S Culver Street, Lawrenceville, GA 30046.

8.

At all such times, Plaintiff was an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4).

9.

During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under the ADA.  Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

## **ADMINISTRATIVE PROCEDURES**

10.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on July 16, 2020.

11.

The EEOC issued a "Notice of Right to Sue" on September 28, 2020, entitling an action to be commenced within ninety (90) days of receipt of that notice.

12.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

## FACTUAL ALLEGATIONS

13.

Ms. Williams began working for Defendant on or about February 26, 2020.

14.

Ms. Williams has a disability and/or perceived disability.

15.

Specifically, Ms. Williams suffers from ongoing pain in her neck and back.

16.

Defendant hired Ms. Williams to be a Reviewer, meaning her job responsibilities were to watch video footage on a single monitor that was at eye level. Ms. Williams' shifts generally lasted ten hours.

17.

On or around March 10, 2020, Ms. Williams informed her manager, Katherine Washington, that she suffered from ongoing neck and back disabilities and was therefore unable to perform certain tasks that were outside her job position.

18.

Specifically, Ms. Williams could not work a "live station," which involved continuous monitoring of screens positioned to the side and above the monitoring employee. Due to her disabilities, Ms. Williams could not frequently move her neck to the side and upwards as was required at a live station.

19.

Ms. Williams also provided the company, through Ms. Washington, with medical documentation showing that she had disabilities that impacted her neck and back, including an MRI and a thermal imaging scan.

20.

One week later, on or around March 17, 2020, Ms. Washington asked Ms. Williams to change job positions to work a live station.

21.

Ms. Williams immediately reminded Ms. Washington that she could not operate a live station because of her disabilities, and Ms. Washington told her to speak with Gayla Nichols, the Senior Monitoring Manager.

22.

On or around March 26, 2020, Ms. Williams spoke with Ms. Nichols and explained that she could not work a live station because of her disabilities and that attempting to do so would cause her pain by forcing her to frequently move her head to the side and upwards.

23.

Ms. Williams also told Ms. Nichols that she could not stand for long periods of time due to sciatica and piriformis syndrome.

24.

Ms. Nichols told Ms. Williams that she would have to work a live station if Defendant was short-staffed, and that Ms. Williams could stand for her shift.

25.

Beginning on March 17, 2020, when Ms. Williams first told Ms. Washington that she could not work the live station because of her disabilities, Ms. Washington continued to ask Ms. Williams to work shifts at a live station.

26.

Between March 17, 2020, and Ms. Williams' last shift on April 3, 2020, Ms. Washington repeatedly harassed Ms. Williams and threatened her with termination. For example, Ms. Washington would often say: "Some of you new people aren't going to be here much longer, telling us what you can and can't do."

27.

Ms. Washington also frequently asked Ms. Williams to move her head upwards and side to side to look at the screens while she was working a live station, despite knowing that Ms. Williams' disabilities prevented her from doing so.

28.

On or around April 3, 2020, Ms. Washington again asked Ms. Williams to cover a live station.

29.

Ms. Williams again told Ms. Washington that she could not work a live station because of her disabilities, and she told Ms. Washington that she had spoken with Ms. Nichols about accommodating her disabilities. Specifically, Ms. Williams explained that she could not frequently move her neck side to side and upwards to continuously monitor the screens at a live station.

30.

Despite her disabilities, Ms. Washington asked Ms. Williams to stay at the live station. Ms. Washington monitored the live station to the extent she could without aggravating her disabilities.

31.

Defendant terminated Ms. Williams' employment on April 7, 2020, telling her that she was not a good fit.

32.

While employed, Ms. Williams had requested a reasonable accommodation of her disabilities.

33.

Specifically, Ms. Williams requested to remain a Reviewer and/or to not be placed on workstations that required significant neck movement.

34.

Defendant failed to engage in the interactive process with Ms. Williams, even though doing so would not have been an undue hardship.

35.

Instead, Defendant ignored Ms. Williams' requests and then terminated her employment for complaining about potential ADA violations.

36.

Defendant terminated Ms. Williams because she had a record of a disability and/or because it regarded her as disabled and/or because she engaged in protective activity.

## CLAIMS FOR RELIEF

## COUNT I:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA

37.

Plaintiff re-alleges paragraphs 13-36 as if set forth fully herein.

38.

Plaintiff has a physical impaiment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, and standing.

39.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

40.

Defendant was aware of Plaintiff's disability.

41.

Defendant regarded Plaintiff as having a disability such that she is a person with a disability and/or perceived disability within the meaning of the ADA, as amended.

42.

Plaintiff has a record of having a disability and/or perceived disability such that she is a person with a disability within the meaning of the ADA, as amended.

43.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

44.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

45.

Defendant terminated Plaintiff's employment because of her accommodation requests.

46.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

47.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

48.

Defendant treated other employees outside Plaintiff's protected class differently.

49.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

50.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

51.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

52.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

53.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

54.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

55.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

56.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

57.

Plaintiff re-alleges paragraphs 13-36 as if set forth fully herein.

58.

Plaintiff has a physical impairment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, and standing.

59.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

60.

Defendant was aware of Plaintiff's disability.

61.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

62.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

63.

Plaintiff requested that Defendant accommodate her disability by allowing her to remain as a Review and/or not transferring her to a workstation that required significant neck movement.

64.

Upon receiving Plaintiff's request for an accommodation, Defendant failed to meaningfully engage in the interactive process with Plaintiff regarding her request for a reasonable accommodation of her disability.

65.

Defendant refused to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

66.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

67.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

68.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her disability.

69.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

70.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

71.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages,

equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

72.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

73.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT III:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

74.

Plaintiff re-alleges paragraphs 13-36 as if set forth fully herein.

75.

Plaintiff has a physical impaiment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, and standing.

76.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

77.

Defendant was aware of Plaintiff's disability.

78.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

79.

Defendant terminated Plaintiff for requesting an accommodation for her disability and/or perceived disability.

80.

Plaintiff's request for an accommodation of her disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

81.

Defendant retaliated against Plaintiff by terminating her employment on the basis of her request for an accommodation.

82.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests.

83.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

84.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

85.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

86.

As a result of Defendant's retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

87.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages,

equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

88.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

89.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

**WHEREFORE**, Plaintiff judgment as follows:

(a)     General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation, and approval of said acts;

(c)     Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)        Reasonable attorney's fees and expenses of litigation;

(e)        Trial by jury as to all issues;

(f)        Prejudgment interest at the rate allowed by law;

(g)        Declaratory relief to the effect that Defendant has violated

Plaintiff's statutory rights;

(h)        Injunctive relief of reinstatement, or front pay in lieu thereof, and

prohibiting Defendant from further unlawful conduct of the type

described herein; and

(i)        All other relief to which she may be entitled.


Respectfully submitted the 23rd day of December, 2020.

                                        **BARRETT & FARAHANY**

                                        *s/ Amanda A. Farahany*
                                        Amanda A. Farahany
                                        Georgia Bar No. 646135

                                        *Attorney for Laverne Williams*

1100 Peachtree Street, Suite 500
Atlanta, GA 30309
(404) 214-0120
amanda@justiceatwork.com